# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL NO. 1:11-CR-151 |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| **OLUFEMI ADIGUN,** | : | |
| | : | |
| **Defendant** | : | |

## **MEMORANDUM**

The court sentenced defendant Olufemi Adigun ("Adigun") to 168 months' imprisonment after a jury convicted him of conspiracy to commit mail and wire fraud, conspiracy to commit money laundering, unlawful monetary transactions, and laundering of monetary instruments. (Doc. 268). Presently before the court is Adigun's *pro se* motion (Doc. 282) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Adigun asserts that the prosecution violated Batson v. Kentucky, 476 U.S. 79 (1986), and that he was denied effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. For the reasons that follow, the court will deny in part and defer in part Adigun's motion.

**I.    Factual Background & Procedural History**[1]

On April 27, 2011, a grand jury returned an indictment charging Adigun with one count of conspiracy to commit mail fraud, wire fraud, and money laundering. (Doc. 7). The court appointed Wendy J.F. Grella, Esquire to represent Adigun. (See

---

[1] The above narrative summarizes the factual and procedural background of this case as derived from the record. Citations to the record include the transcript of trial proceedings ("[Date] Trial Tr.") and the transcript of Adigun's sentencing hearing convened on June 30, 2014 ("Sent. Tr.").

Docs. 12, 17). A superseding indictment followed on August 24, 2011, which charged Adigun with one count of conspiracy to commit mail and wire fraud (Count 1), one count of mail fraud (Count 2), eight counts of wire fraud (Counts 3–10), twenty counts of engaging in unlawful monetary transactions in criminally derived property (Counts 11–30), and one count of conspiracy to commit money laundering (Count 31). (Doc. 29). Shortly thereafter, Adigun retained private counsel, Matthew Gover, Esquire ("Attorney Gover") to represent him. (See Doc. 36). Adigun entered a plea of not guilty as to all counts on September 27, 2011. (Doc. 48).

Adigun's first trial commenced on May 7, 2012, and ended on May 17, 2012. At the close of the government's case in chief, the court dismissed Count 14 on the government's motion and Counts 16, 19, and 26 on Adigun's motion. (5/15/12 Trial Tr. 4:25-6:25, 7:2-20). The jury ultimately acquitted Adigun of Counts 2 through 15, 17, and 30 but deadlocked on Counts 1, 18, 20 through 25, 27 through 29, and 31. (Doc. 96). The court declared a mistrial on these counts. (5/17/12 Trial Tr. 27:10-16). The government promptly filed a notice of intention to retry the remaining counts. (Doc. 102).

Attorney Gover withdrew as counsel to Adigun after trial. (Docs. 109, 115). On September 12, 2012, the court appointed John Abom, Esquire ("trial counsel" or "Attorney Abom") to represent Adigun. (Docs. 115, 116). On December 12, 2012, the government filed a second superseding indictment against Adigun and two codefendants. (Doc. 134). The second superseding indictment charged Adigun with one count of conspiracy to commit mail and wire fraud (Count 1), ten counts of engaging in unlawful monetary transactions in criminally derived property (Counts

18, 20–25, 27–29), one count of conspiracy to commit money laundering offenses (Count 31), seven counts of engaging in unlawful monetary transactions over $10,000 in criminally derived property (Counts 34–40), and five counts of money laundering (Counts 51–55). (Id.)

Adigun's second jury trial commenced on July 15, 2013. Adigun was represented by Attorney Abom throughout trial. During jury selection, Attorney Abom raised an objection pursuant to Batson v. Kentucky, 476 U.S. 79 (1986). (See 7/15/13 Trial Tr. 96:3-14). The court heard argument and overruled Attorney Abom's objection. (See id. at 96:15-100:14). Adigun's principal defense at trial was that he did not *knowingly* defraud any of the victims. (See, e.g., 7/18/13 Trial Tr. 121:13-122:11). The court dismissed Counts 20, 21, 23 through 25, 27 through 29, 34, and 35 on the government's motion at the close of their case in chief. (Id. at 59:6-21). On July 19, 2013, the jury convicted Adigun on the remaining 14 counts. (Doc. 200). Adigun thereafter filed a motion for new trial. (See Docs. 207, 221). Jonathan W. Crisp, Esquire ("appellate counsel" or "Attorney Crisp") replaced Attorney Abom as counsel for the duration of proceedings. (See Docs. 223-25). The court denied Adigun's motion for new trial by memorandum opinion on February 19, 2014. United States v. Adigun, 998 F. Supp. 2d 356 (M.D. Pa. 2014) (Conner, C.J.).

The United States Probation Office conducted a presentence investigation and prepared a presentence report ("PSR") for Adigun. The PSR calculated Adigun's base offense level as 33, which included a two-level increase pursuant to Section 2B1.1(b)(10) of the United States Sentencing Guidelines ("Guidelines") because a substantial part of the fraudulent scheme was committed outside the

United States and the offense involved sophisticated means. (PSR ¶ 22). Adigun's offense level was further increased by two levels under Section 2S1.1(b)(2)(B) because he was convicted pursuant to 18 U.S.C. § 1956. (Id. ¶ 23). A two-level enhancement was applied under Section 2S1.1(b)(3) because the offense involved sophisticated laundering. (Id. ¶ 24). The PSR calculated Adigun's total offense level at 37 and a Guidelines range of 210 to 262 months' imprisonment. (Id. ¶ 52).

At sentencing, the government moved for a two-level enhancement for obstruction of justice. (Sent. Tr. 3:21-24; see also PSR ¶ 27). Attorney Crisp objected to the obstruction of justice enhancement, (Sent. Tr. 71-9-77:15), the two-level sophisticated means enhancement, (see id. at 86:7-14), and the sophisticated money laundering enhancement, (id. at 87:2-4). Attorney Crisp also requested a downward departure pursuant to Section 3B1.2 based on Adigun's mitigating role. (Id. at 3:19-21, see also Doc. 257).

The court applied the obstruction of justice enhancement, (Sent. Tr. 82:21-86:5), and overruled Attorney Crisp's objections to the sophistication enhancements, (id. at 86:6-88:24). The court found Adigun's total offense level to be 39 and the corresponding Guidelines range to be 262 to 327 months. (Id. at 89:1-9). The court denied Attorney Crisp's request for downward departure. (Id. at 90:29-92:7). After considering the salient 18 U.S.C. § 3553(a) factors, the court varied downward to impose a sentence of 168 months' imprisonment. (Id. at 104:14-108:12).

Adigun appealed the court's denial of his motion for new trial to the United States Court of Appeals for the Third Circuit on July 7, 2014. (Doc. 269). On May 7,

2015, the Third Circuit affirmed Adigun's conviction. United States v. Adigun, 609 F. App'x 718 (3d Cir. 2015) (nonprecedential). Adigun timely filed the instant motion (Doc. 282) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Adigun filed the motion *pro se* but indicates therein that he received "assistance . . . with respect to its drafting" from an attorney. (See id. at 13 n.1). The motion is fully briefed and ripe for disposition.

## II. Legal Standard

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. 28 U.S.C. § 2255. Courts may afford relief under Section 2255 on a number of grounds including, *inter alia*, "that the sentence was imposed in violation of the Constitution or the laws of the United States." 28 U.S.C. § 2255(a); see also 28 U.S.C. § 2255 Rule 1(a). The statute provides that, as a remedy for an unlawfully-imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The court accepts the truth of the defendant's allegations when reviewing a Section 2255 motion unless those allegations are "clearly frivolous based on the existing record." United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005). A court is required to hold an evidentiary hearing when the motion "allege[s] any facts warranting § 2255 relief that are not clearly resolved by the record." United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015) (quoting Booth, 432 F.3d at 546).

**III. Discussion**

Adigun advances two theories in support of his request for Section 2255 relief. *First*, Adigun reiterates the contention raised at trial and on appeal that the government impermissibly struck an African American juror based on her race. *Second*, Adigun remonstrates that his trial and appellate counsel were ineffective. The court considers these issues *seriatim*.

**A.  Batson Violation**

Adigun argues that the government exercised a peremptory challenge to strike the only African American on the jury panel based on race in violation of Batson v. Kentucky, 476 U.S. 79 (1986). (See Doc. 282 at 17; see also Doc. 291 at 9-11). The Third Circuit reviewed and rejected this exact argument on direct appeal from Adigun's post-judgment motion for a new trial. See Adigun, 609 F. App'x at 720-21. A Section 2255 motion may not be used to relitigate questions that were raised and resolved on direct appeal. See United States v. Travillion, 759 F.3d 281, 288 (3d Cir. 2014); United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993). The court will deny Adigun's motion on this ground.[2]

---

[2] Adigun cites to the Supreme Court's recent decision in Foster v. Chatman, 578 U.S. __, 136 S. Ct. 1737 (2016), in support of his renewed Batson entreaty. (See Doc. 291 at 9-11). In Foster, the Supreme Court resolved that a prosecutor's notes from *voir dire*, which consistently pointed to race as the basis for striking jurors, adequately evinced purposeful discrimination of the type prohibited by Batson. See Foster, 136 S. Ct. at 1754-55. It is unclear whether Adigun asserts that his trial or appellate counsel were ineffective for failing to seek hypothetical prosecutor notes based on Chatman. However, Adigun effectively concedes that he does not know whether such notes exist *sub judice*, (see Doc. 291 at 9-11), and a Section 2255 movant must offer more than speculation to warrant an evidentiary hearing, see Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3d Cir. 1991).

6

### B. Ineffective Assistance of Counsel

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on this claim, a defendant must demonstrate, first, that trial counsel's representation fell below an objective level of reasonableness based on prevailing professional norms and, second, that the deficient representation was prejudicial. See id. at 687-88. Conclusory allegations are insufficient to entitle a defendant to relief under Section 2255. See United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000); Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63 (1977)).

In determining whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be highly deferential toward counsel's conduct. Strickland, 466 U.S. at 689. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90). Counsel will not be deemed ineffective for failing to raise a meritless claim. See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the defendant must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. The district court need not conduct its analysis of the two prongs in a particular order or even address both prongs of

7

the inquiry if the defendant makes an insufficient showing in one. See id. at 697; United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

### 1. *Failure to Communicate Plea Offer*

Adigun first claims that trial counsel rendered ineffective assistance of counsel by rejecting a government plea offer of 33 months prior to consulting him. (Doc. 282 at 13). In support of this claim, Adigun supplies his own affidavit as well as affidavits executed by his mother and sister, each attesting that counsel rejected a 33-month plea offer from the government "[i]n or around May 2013." (See Doc. 282-1, Exs. 1–3). The court cannot test the merits of this assertion on the present record. Consequently, the court will defer resolution of this ground for Section 2255 relief pending an evidentiary hearing.

### 2. *Failure to Appeal Sophisticated Money Laundering Enhancement*

Adigun contends appellate counsel provided ineffective assistance by failing to appeal the court's application, over objection, of the two-level enhancement for "sophisticated laundering" pursuant to U.S.S.G. § 2S1.1(b)(3) at sentencing. (Doc. 282 at 2-3; see also Doc. 291 at 5-7). Counsel's strategic decisions are accorded significant deference. Marshall v. Hendricks, 307 F.3d 36, 85 (3d Cir. 2002); Parmelee v. Piazza, 622 F. Supp. 2d 212, 227 (M.D. Pa. 2008). Appellate counsel is not required to advance every nonfrivolous claim, but rather may argue only certain claims to maximize the chance of success on appeal. Johnson v. Tennis, 549 F.3d 296, 302 (3d Cir. 2008) (citing Smith v. Robbins, 528 U.S. 259, 288 (2000)). Generally, the presumption of effective assistance will only be overcome when unraised issues

are clearly stronger than those presented. See Smith, 528 U.S. at 288. At no point does Adigun explain how this proposed claim is clearly stronger than the claim raised on appeal. In the face of this court's thorough *ratio decidendi* supporting application of the sophisticated money laundering enhancement, (see Sent. Tr. 87:1-88:24), the court cannot conclude that it was objectively unreasonable for appellate counsel to refrain from raising this issue on appeal.

Moreover, Adigun fails to demonstrate a reasonable probability that the outcome would have been different *even if* appellate counsel had appealed the court's application of the sophisticated laundering enhancement. See Strickland, 466 U.S. at 694; see also Smith, 528 U.S. at 285-86. At sentencing, the court carefully distinguished the facts underlying the sophisticated laundering enhancement from those underlying the sophisticated means enhancement for fraud. (Sent. Tr. 88:7-24). Adigun fails to articulate how the Third Circuit would have found clear error in this reasoning. See United States v. Fish, 731 F.3d 277, 279-80 (3d Cir. 2013). Thus, Adigun is not entitled to Section 2255 relief on this ground.

### 3. *Failure to Object to Testimony of Expert Witness*

Adigun avers that trial counsel was ineffective in failing to object to a leading question that resulted in government witness Agent Michael Hartman ("Hartman") "testifying as both an expert and fact witness with respect to whether some of [Adigun's] actions constituted money laundering." (Doc. 282 at 4; see also Doc. 291 at 7-9). Adigun asserts that there is a reasonable probability that, but for trial counsel's failure to object to this question, the outcome of the trial would have been different. (See Doc. 282 at 4; Doc. 291 at 9). The court disagrees.

9

First, trial counsel's failure to object to the prosecution's question does not fall below an objective level of reasonableness based on prevailing professional norms. See Strickland, 466 U.S. at 687-88. At trial, Hartman was qualified as an expert in the "field of mass marketing fraud and money laundering as it relates specifically to MoneyGram and Western Union." (7/16/13 Trial Tr. 47:14-48:2). He identified several "corrupt agent fraud indicators," including "agent check swapping," as indicators of both fraud and money laundering. (See id. at 48:4-7, 54:1-18; 7/17/13 Trial Tr. 275:21-276:5). On the third day of trial, the prosecution asked Hartman, as an expert witness, whether or not FAB Tax Services ("FAB") (the entity established by Adigun and his codefendants through which they conducted their crimes) and Transcorp Consultants ("Transcorp") (another allegedly corrupt MoneyGram and Western Union agency) engaged in agent check swapping in August and September of 2008. (See 7/17/13 Trial Tr. 266:9-267:12). Hartman responded "Yes," and explained the process of agent check swapping. (Id. at 267:11-268:4). He testified that agent check swapping is a form of money laundering. (Id. at 268:5-6). The prosecution then asked Hartman the leading question at issue *sub judice*: whether agent check swapping was made possible in this case "because FAB had room in its bank accounts . . . after they were shut down to handle these cash withdrawals." (Id. at 268:7-9). Hartman responded affirmatively and stated generally that the FAB accounts were used to their "greatest potential" while they were still active. (See id. at 268:10-18). Neither the prosecution's question nor Hartman's response directly implicated Adigun or his

mental state such that trial counsel's failure to object fell below an objective level of reasonableness.

Second, assuming *arguendo* that trial counsel should have objected to the prosecution's question and further speculating that the court would have sustained the objection and stricken Hartman's response, the court cannot find that the outcome of the trial would have been different. As previously stated:

> At trial, the government introduced substantial testimonial and documentary evidence establishing Adigun's involvement in transferring and laundering profits from various mass marketing consumer fraud schemes. Based on the empty storefront, the lack of legitimate transactions, and the falsified payee identifier information, there is no indication that Adigun was a legitimate Western Union and MoneyGram agent. The government even presented evidence that Adigun personally converted over $1 million of the ill-gotten proceeds into cash by issuing money transfer checks and making substantial individual cash withdrawals. Adigun helped transfer funds to other accounts controlled by [defendant Benjamin] Chikwe and other co-conspirators, and a substantial amount of money was transferred offshore to Canada, Nigeria, and Romania. It is easy to infer Adigun's knowledge of the illicit nature of his activities from this overwhelming amount of evidence. There is absolutely no danger that the jury convicted an innocent person in this case.

United States v. Adigun, 998 F. Supp. 2d 356, 369 (M.D. Pa. 2014) (Conner, C.J.), aff'd on other grounds, 609 F. App'x 718. Trial counsel's failure to object to the prosecution's question did not prejudice Adigun. The court finds no basis for Section 2255 relief on this ground.

#### 4. *Failure to Appeal Obstruction of Justice Enhancement*

Adigun's third argument concenters upon appellate counsel's failure to appeal the court's application of a two-level enhancement for obstruction of justice. (Doc. 282 at 6; Doc. 291 at 11-12). The obstruction enhancement applies if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instance offense." U.S.S.G. § 3C1.1. Application Note 4 to Section 3C1.1 indicates that "committing, suborning, or attempting to suborn perjury" constitutes obstruction of justice. Id. at cmt. n.4. A witness testifying under oath commits perjury if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993); see also Pitts v. United States, 122 F. Supp. 3d 221, 237 (E.D. Pa. 2015). To apply the two-level obstruction enhancement due to perjury, the court must "review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice." See Dunnigan, 507 U.S. at 95.

At sentencing the court applied the two-level enhancement, over Attorney Crisp's objection, after independently finding that "Adigun's testimony that he was not aware of the fraudulent nature of the money he laundered was clearly false, it was clearly material, and it was clearly willful." (Sent. Tr. 85:24-86:5). Moreover, to find Adigun guilty of conspiracy to commit mail and wire fraud, unlawful monetary transactions, conspiracy to commit money laundering, and the laundering of money instruments, the jury had to determine that Adigun "possessed knowledge of the

unlawful nature of his conduct and underlying conspiracy's illicit purpose." (See id. at 84:24-85:5). Appellate counsel's failure to appeal the court's application of the two-level enhancement for obstruction of justice in the face of the independent determinations made by the jury and by the court does not fall below an objective level of reasonableness. See Pitts, 122 F. Supp. 3d at 238. Adigun therefore fails to meet the first prong of Strickland.

### 5. *Failure to Request Stay*

Adigun lastly argues that appellate counsel should have requested a stay of his direct appeal in anticipation of the effective date of Amendment 792 to the Sentencing Guidelines. (Doc. 282 at 7; Doc. 291 at 12-14). Assuming *arguendo* that appellate counsel could have raised this argument as part of Adigun's direct appeal for a new trial, a request for a stay would have been fruitless. Amendment 792 does not apply retroactively. See United States v. Brown, 694 F. App'x 62, 64 (3d Cir. 2017) (nonprecedential); United States v. Egwuekwe, 668 F. App'x 421, 422 (3d Cir. 2016) (nonprecedential).[3] Thus, even if appellate counsel had requested a stay and been granted same by the Third Circuit, Adigun's sentence would not have changed. Hence, Adigun fails to satisfy the prejudice prong of Strickland. See Strickland, 466 U.S. at 694.

---

[3] The court acknowledges that nonprecedential decisions are not binding upon federal district courts. Citations to nonprecedential decisions herein reflect that the court has considered the panel's *ratio decidendi* and is persuaded by same.

**IV. Conclusion**

The court will deny in part and defer in part Adigun's motion (Doc. 282) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. An appropriate order shall issue.

      /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: January 24, 2018