IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : CRIMINAL NO. 1:11-CR-151 |
| | : |
| v. | : (Judge Conner) |
| | : |
| **OLUFEMI ADIGUN (1),** | : |
| | : |
| **Defendant** | : |

## MEMORANDUM

Defendant Olufemi Adigun moves for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 355). Adigun asks the court to reduce his sentence to time served based on his concern regarding spread of the COVID-19 virus[1] at the low-security Federal Correctional Institution at Beaumont, Texas ("FCI Beaumont Low"), where he is currently incarcerated. The government opposes compassionate release. For the reasons that follow, we will deny Adigun's motion.

**I.      Factual Background & Procedural History**

On April 27, 2011, a grand jury returned an indictment charging Adigun with one count of conspiracy to commit mail fraud, wire fraud, and money laundering. (Doc. 7). A superseding indictment followed on August 24, 2011, which charged Adigun with one count of conspiracy to commit mail and wire fraud (Count 1), one

---

[1] The COVID-19 virus is also known as "severe acute respiratory syndrome coronavirus 2" and "SARS-CoV-2." *Naming the coronavirus disease (COVID-19) and the virus that causes it,* WORLD HEALTH ORGANIZATION, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it. We refer to the virus herein as "the COVID-19 virus" and to the disease it causes as "COVID-19."

count of mail fraud (Count 2), eight counts of wire fraud (Counts 3-10), twenty counts of engaging in unlawful monetary transactions in criminally derived property (Counts 11-30), and one count of conspiracy to commit money laundering (Count 31).  (Doc. 29).

Adigun's first trial commenced in May 2012.  At the close of the government's case in chief, the court dismissed Count 14 on the government's motion and Counts 16, 19, and 26 on Adigun's motion.  (5/15/12 Trial Tr. 4:25-6:25, 7:2-20).  The jury ultimately acquitted Adigun of Counts 2 through 15, 17, and 30 but deadlocked on Counts 1, 18, 20 through 25, 27 through 29, and 31.  (Doc. 96).  The court declared a mistrial on these counts.  (5/17/12 Trial Tr. 27:10-16).

In December 2012, the government filed a second superseding indictment against Adigun and two codefendants.  (Doc. 134).  The second superseding indictment charged Adigun with one count of conspiracy to commit mail and wire fraud (Count 1), ten counts of engaging in unlawful monetary transactions in criminally derived property (Counts 18, 20-25, 27-29), one count of conspiracy to commit money laundering offenses (Count 31), seven counts of engaging in unlawful monetary transactions over $10,000 in criminally derived property (Counts 34-40), and five counts of money laundering (Counts 51-55).  (Id.)

Adigun's second jury trial took place in July 2013.  The court dismissed Counts 20, 21, 23 through 25, 27 through 29, 34, and 35 on the government's motion at the close of its case in chief.  (7/18/13 Trial Tr. 59:6-21).  On July 19, 2013, the jury convicted Adigun on the remaining 14 counts.  (Doc. 200).  Adigun thereafter filed a motion for new trial, (see Docs. 207, 221), which the court denied on February 19,

2

2014, see United States v. Adigun, 998 F. Supp. 2d 356, 359 (M.D. Pa. 2014) (Conner, C.J.).

The United States Probation Office conducted a presentence investigation and prepared a presentence report ("PSR") for Adigun. The PSR established Adigun's base offense level as 33. (PSR ¶ 22). Adigun's total offense level was calculated to be 37, with a Guidelines range of 210 to 262 months' imprisonment. (Id. ¶ 52). At sentencing, the government moved for an additional two-level enhancement for obstruction of justice. (Sent. Tr. 3:21-24; see also PSR ¶ 27). The court agreed with the government's position and found Adigun's total offense level to be 39 and the corresponding Guidelines range to be 262 to 327 months. (Sent. Tr. 89:1-9). After considering the salient 18 U.S.C. § 3553(a) factors, the court varied downward to impose a sentence of 168 months' imprisonment. (Id. at 104:14-108:12).

Adigun appealed the court's denial of his motion for new trial on July 7, 2014. (Doc. 269). On May 7, 2015, the Third Circuit Court of Appeals affirmed Adigun's conviction. United States v. Adigun, 609 F. App'x 718 (3d Cir. 2015) (nonprecedential).

Adigun is currently housed at FCI Beaumont Low, with a projected release date of June 20, 2025. See *Find an Inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (search for BOP Register Number "71754-279") (last visited July 1, 2020). On May 10, 2020, Adigun requested that the warden at FCI Beaumont Low consider moving the court for compassionate release in light of the public health and epidemiological concerns regarding transmission of the COVID-

3

19 virus in an institutional setting. (See Doc. 357 at 2). Eight days later, Adigun filed a *pro se* motion for compassionate release with this court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (See Doc. 355). That same day, we appointed the Federal Public Defender to determine whether Adigun may be eligible for relief and, if so, to file any appropriate motion or briefing on Adigun's behalf. (Doc. 356).

On June 16, 2020, appointed counsel filed a brief in support of Adigun's motion for compassionate release. (Doc. 357). The government filed an expedited response on June 23, (Doc. 363), and Adigun filed a counseled reply on June 29, (Doc. 365). Adigun's motion for compassionate release is now ripe for review.

## II.  Discussion

Adigun asks the court to reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act of 2018, § 603(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239. Section 3582(c)(1)(A)(i) allows the sentencing court to reduce a term of imprisonment if the court finds, after consideration of the Section 3553(a) factors, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

Both the defendant and the Director of the Bureau of Prisons ("BOP") can move for compassionate release under Section 3582(c)(1)(A). See id. § 3582(c)(1)(A). But before a defendant can move the court directly, he must either "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or wait for 30 days to lapse from the warden's receipt of a request that the BOP file such a motion. Id.

4

Neither Adigun nor the government provides any indication of the warden's response to Adigun's May 10 request to bring a motion on his behalf. The government fails to engage with the issue of administrative exhaustion at all. It simply notes that Adigun alleges that he submitted a compassionate release request on May 10 to the warden, (see Doc. 363 at 5 & n.1), and proceeds to a substantive analysis of Adigun's motion assuming this allegation is true, (see id.).[2] We therefore turn to the merits of Adigun's motion.

### A. Extraordinary and Compelling Reasons

Adigun asserts that his potential exposure to the COVID-19 virus while incarcerated in a facility where social distancing is impossible establishes an extraordinary and compelling reason to grant compassionate release. Although we are sympathetic to Adigun's concerns, we do not believe compassionate release to be appropriate in this case.

---

[2] We have previously held that, should the warden deny a request to bring a motion for compassionate release on a prisoner's behalf within the 30-day timeframe provided by 18 U.S.C. § 3582(c)(1)(A)—thus not allowing 30 days to "lapse" without action—the prisoner "must fully exhaust the warden's denial within the BOP before the court can entertain his motion." See United States v. Petrossi, No. 1:17-CR-192, Doc. 133 at 2 & n.1 (M.D. Pa. Apr. 28, 2020) (collecting cases). Neither party has indicated whether the warden responded to Adigun's May 10 request. If the warden failed to respond within 30 days, it is clear that Adigun's motion is properly before us. See 18 U.S.C. § 3582(c)(1)(A). However, even if the warden had timely denied Adigun's request, the government may still waive the defense of statutory exhaustion by explicitly conceding it, even if that concession is based on "a flawed legal conclusion." See Sharrieff v. Cathel, 574 F.3d 225, 229 (3d Cir. 2009) (discussing waiver of failure-to-exhaust defense as it relates to habeas petition under 28 U.S.C. § 2254). Because the parties do not raise the issue, and because we find that Adigun's motion is meritless, we need not decide whether, in the context of a motion for compassionate release, failure to raise an exhaustion objection in the only responsive filing effectuates waiver of that defense.

Congress delegated responsibility for defining "extraordinary and compelling reasons" for compassionate release to the United States Sentencing Commission. See 28 U.S.C. § 994(t). In Application Note 1 to Section 1B1.13 of the United States Sentencing Guidelines, the Commission identifies criteria for determining eligibility for a sentence reduction.[3] See U.S.S.G. § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018). Eligible circumstances include terminal illness as well as "a serious physical or medical condition" or "deteriorating physical or mental health because of the aging process" if the impairment "substantially diminishes" the ability to provide self-care within a correctional facility and is one from which the defendant "is not expected to recover." Id. at cmt. n.1(A)(i), (A)(ii)(I), (A)(ii)(III). A defendant may also be eligible for an age-based reduction if he is 65 or older, is experiencing "serious deterioration in physical or mental health because of the aging process," and has served the lesser of 10 years or 75 percent of his term of imprisonment. Id. at cmt. n.1(B). The Application Note closes with a catchall, authorizing a reduction when the Director of the BOP identifies in a particular case "an extraordinary or compelling reason other than, or in combination with," the above. Id. at cmt. n.1(D).

---

[3] We recognize that this policy statement has not been amended since passage of the First Step Act. See United States v. Kelly, No. 3:13-CR-59, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (quoting United States v. Perdigao, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020)). We agree with those courts that have found that Section 1B1.13 still "provides helpful guidance" even if it is no longer controlling. Id. (quoting United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019)).

The BOP has developed internal criteria for addressing prisoner requests for compassionate release motions. The BOP's criteria contemplate early release for certain terminally ill, severely debilitated, or elderly prisoners, none of which applies to Adigun. FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50: COMPASSIONATE RELEASE/REDUCTION IN SENTENCE: PROCEDURES FOR IMPLEMENTATION OF 18 U.S.C. §§ 3582 AND 4205(G) at 4-7 (Jan. 17, 2019). The BOP also considers a host of other factors in its decision, including the nature of the offense, criminal history, amount of time served, supervised release violations, age at the time of offense, and disciplinary infractions. See id. at 12.

Adigun is 34 years old and cites not a single medical or health problem in his motion for early release. His primary concern appears to be the risk of contracting the COVID-19 virus while incarcerated in a facility where the virus has been detected. This risk, while real, is insufficient to warrant compassionate release. Indeed, such circumstances would apply to innumerable prisoners at dozens of federal correctional facilities across the country. See *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (follow "Full breakdown and additional details" hyperlink) (last updated July 7, 2020, 3:00 p.m.)

As of this writing, the BOP reports 63 inmates and one staff member currently testing positive for the COVID-19 virus at FCI Beaumont Low. See id. No deaths have been reported. Id. While these numbers are on the higher end of the spectrum for federal detention facilities, they are not so dire as to constitute an extraordinary or compelling basis in themselves. And we have no indication that

Adigun has been directly exposed to the virus through direct contact with a prisoner or staff member who has tested positive.

Moreover, the BOP has implemented extensive efforts to prevent future outbreaks. It has suspended most visitation, implemented screening measures for staff and prisoners, and limited contractor visits to essential services. See *BOP Implementing Modified Operations*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 2, 2020). Prisoner movement between facilities has been "suspended with limited exceptions." Id. Movement within facilities is restricted as well, with exceptions for mental health and medical treatment; certain programs and services; and access to commissary, laundry, showers, and telephones. See id. The BOP has also reduced its overall prison population by ramping up exercise of its authority under 18 U.S.C. § 3624(c)(2)—recently expanded by the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020)—to release certain vulnerable prisoners to home confinement. See *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/. The BOP reports that it has increased use of home confinement by 162%, releasing an additional 4,619 prisoners in the past three months. Id.

In sum, the mere fact that there are inmates or staff who have tested positive for the COVID-19 virus at a defendant's correctional institution does not rise to the level of "extraordinary and compelling" reasons for early release. We thus find that Adigun has not established the first requirement for his compassionate release request.

8

**B.     Section 3553(a) Factors**

Even if we were to agree that extraordinary and compelling circumstances exist, our analysis must still be informed by the Section 3553(a) factors.[4] See 18 U.S.C. § 3582(c)(1)(A). Adigun has served less than half of the 168-month sentence imposed by this court. His projected release date, accounting for expected good-time credit, is June 20, 2025.

The Section 3553(a) factors militate against more than halving Adigun's sentence. We found at the time of sentencing, and reaffirm now, that a 168-month sentence reflects an appropriate balancing of various mitigating and aggravating considerations. Adigun was involved in a large-scale fraud scheme and was convicted by a jury of numerous, serious crimes involving large amounts of money. Furthermore, Adigun's sentence already reflects a substantial downward variance from his Guidelines range. We commend Adigun for his good conduct and rehabilitative efforts while incarcerated, and truly hope that he continues on this path for the remainder of his sentence. But on balance, the Section 3553(a) factors support leaving Adigun's existing sentence unchanged.

---

[4] The Section 3553(a) factors are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner"; (3) "the kinds of sentences available"; (4) the kinds of sentence and sentencing range recommended by the United States Sentencing Guidelines; (5) pertinent policy statements issued by the United States Sentencing Commission; (6) "the need to avoid unwarranted sentencing disparities" among similarly situated defendants; and (7) the need for restitution. 18 U.S.C. § 3553(a).

### III. **Conclusion**

For all of these reasons, the court will deny Adigun's motion (Doc. 355) for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i). Our denial will be without prejudice to Adigun's ability to refile the motion if, for example, Adigun experiences a serious deterioration of his physical health. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   July 8, 2020